Scribner, J.
(orally).
There has been submitted to Judge Haynes and myself, at Chambers, a motion to suspend an order made by Judge Sutphen, at Chambers, dissolving an injunction in the case of The State of Ohioj on relation of Joseph Baldwin and others, tax-payers of Williams County against The Board of Commissioners of Williams County, Ohio, and others. The case is a very important one. It was very fully, carefully and ably argued, and has been carefully considered by us.
On the 24th day of March, 1888, the legislature of Ohio passed an act entitled “ An act to authorize the Board of County Commissioners of the county of Williams to issue bonds, and to either repair, enlarge and improve the present court house, or to build a new court house in said county.”
The act provides as follows :
Section 1. Be it enacted by the General Assembly of the State of Ohio, that the County Commissioners of the county of Williams are hereby authorized to either repair, enlarge and improve the present court house, or to erect a new court house at the county seat of said county; such court house, whether the present structure repaired, enlarged and improved, or an entirely new structure, shall include a good, serviceable basement, and also sufficient and suitable rooms of adequate dimensions for the convenient transaction therein of the county and public business of the courts and various county officials of said county; also, fire proof vaults for the records and unrecorded papers of, and belonging to the various county officers; also the best modern method of ventilation, drainage, lighting and heating; also, tile floors and slate and metal, or metal roof with iron frame work and supports. The said county commissioners shall, within two months from and after the passage of this act, determine which they deem. *405 best for the interests of said county, whether the repair, enlargement and improvement of the present court house, or the erection of an entirely new one, and have such determination forthwith entered upon their journal. Plans and specifications of and for either the said repair, enlargement and improvement, or the said new structure, according as the said commissioners shall have, as aforesaid, determined upon, shall be adopted, and the contract let, according to law, within six (6) months from and after the passage of this act, which contract shall require the said structure, which has been as aforesaid, determined upon, to be completed within as short a time as practicable.
Section 2. That the County. Commissioners of said Williams County, for the purpose of thus repairing, enlarging and improving said court house, or of erecting the new court house, as shall have been, as aforesaid, determined, are hereby authorized to borrow such sums of money, not exceeding fifty thousand dollars ($50,000), as they shall deem necessary, at a rate of interest not exceeding six (6) per cent, per annum, and issue the bonds of said county therefor. The principal of said bonds shall be payable at such time or times, not exceeding twenty years after their date, as the said commissioners shall therein specify, and the interest of said bonds shall be payable semi-annually. The said bonds shall not be sold for less than their par value.
Section B. That the bonds so issued shall specify distinctly the purpose for which they are issued ; shall be in such respective sums as the said commissioners shall determine; shall be paid to bearer at such place as said commissioners shall therein designate, and shall be signed by said commissioners, and attested by the county auditor of said county; and said county auditor shall keep a record of all bonds issued, and coupons thereto attached.
Section 4. For the purpose of paying the interest on said bonds, and the principal of the same as they become due, the commissioners of said county shall annually levy a sufficient tax upon all the taxable property in said county, in addition to the taxes now by law authorized to be levied thereon.
Section 5. This act shall take effect and be in force from and after its passage.
Under the authority of this act, which was passed, as I have said, on the 24th of March, 1888, the commissioners of Wiliams county convened on the 28th of the month, and thereupon the following action was taken by them : ( Here the *406 judge read from the journal of said commissioners, the proceedings of said date, including the resolutions and the vote thereon.)
On the 3d of April, the commissioners met in regular session, a full board being present, and this further proceeding was thereupon had. (Here the court read from said journal the action of said board, at said date, whereby it determined to issue the bonds of said county, to the extent of $50,000, providing the terms of payment, etc., and giving the vote taken thereon.)
The board further directed the auditor to advertise the bonds for sale, and made provision for the renting of a building for the use of the county officials and for court house purposes. The action taken by the board, involved the taking down of the old court house.
On the 4th of April, the commissioners adopted a resolution directing the bonds to be printed in accordance with the resolution of April 3d.
On the same date, Judge Sutphen, of the court of common pleas, appointed Hon. Albert M. Pratt, of Bryan, Ohio, to act with the commissioners in the matter of adopting plans for the new court house building.
On the 17th of April the commissioners again met, in special session, and adopted a resolution employing E. O. Fallis & Co., architects, of Toledo, to prepare plans, drawings, specifications and estimates in detail and in the aggregate, and to superintend the construction of the proposed new court house, and fixing the compensation to be paid. Upon this resolution the three commissioners voted “ yea.”
The county auditor proceeded, on the 3d of April, 1888, to advertise the bonds for sale, as directed by the order of the county commissioners.
On the 1st of May, 1888, the commissioners opened the bids which had been received for the bonds, and awarded the bonds to the highest bidder; the amount so bid being $55,025. They further passed an order directing the issue of the bonds.
On the 19th of May, 1888, the commissioners provided for taking down the old building — the old court house — and they also took action upon the bids for the material of the old building.
*407 On the 5th of June, 1888, this proceeding was had by the county commissioners, “In the matter of the county levies for the year 1888,” etc. (Here the court read proceedings of said date, fixing the amount of the tax levy, etc., for various purposes.)
On the 8th of May, 1888, the committee on the adoption of plans for the new court house at Bryan, Ohio, met in the court room of the old building. There were present, the commissioners, the probate jujige, the clerk of the courts, the sheriff, and also Mr. A. M. Pratt, and some action was taken by the committee at that time in reference to the construction of the building: “ At 1 o’clock, P. M., the committee all being presr ent, proceeded to examine the plans and specifications, and without transacting any further business, adjourned to meet at the call of the chairman.”
On the 27th of June, 1888, Mr. Pratt resigned his position as • one of the advisory board for the examination and approval or rejection of the plans, and Judge Sutphen thereupon appointed to act in his place, Mr. A. J. Tressler.
On the 28th of June, the commissioners and the other officials met, with Mr. Fallis, the architect, who presented plans and specifications. (Here the court read from the journal of said day, giving the estimated cost of the building, etc.)
On July 12th, there was, pursuant to the call of the chairman of the committee, another meeting to examine and act upon the plans and specifications which had been submitted; all the gentlemen interested, including the architect, were present; an adjournment was had until the next day; on the next day, all the committee being present, the following proceeding was had. (Here the court read the resolution of that date approving the plans and specifications.)
Two of the commissioners voted in favor of this resolution and one voted against it; the other members of the committee voted affirmatively.
Thereupon the following resolution was also passed by the commissioners:
■“ Resolved, That the board proceed to cause to be constructed a court house in said county, in accordance with the plans, specifications, drawings and bills this day approved by the *408 •committee in that behalf, and that the county auditor proceed to publish notice according to law, of and for the receiving of sealed proposals for the furnishing of material and performing the labor necessary for said work, and for the making of the ■contract on the l*6th day of August, 1888, at 12 o’clock, noon, as based upon said proposals, such notice shall require all bills or proposals to be in accordance with said schedule following,” ■etc.
Two of the commissioners voted affirmatively on the resolution and one of them voted against it; the resolution was declared carried, having received a majority of the votes. And thereupon the auditor of the county proceeded to advertise for ■bids; but shortly before the time when these bids were to be ■received,.the petition in this case to enjoin further action on the part of the county officials was filed. Upon the filing of the petition a preliminary injunction was granted, restraining the further action of the commissioners — restraining them from proceeding to let the contract. A motion was made to dissolve the injunction, before Judge Sutphen, at chambers. On the hearing the injunction was dissolved. From the order of dissolution an appeal was taken to the circuit court; but before the application was made for the suspension of the order dissolving the injunction, the contract was let by the public authorities,-the contract price being $107,000.00. Subsequently the motion now under consideration was presented and argued, and the question now is whether or not we shall, in effect, grant an order restraining the public authorities of Williams county from proceeding under the contract which has been let for the construction of the proposed new structure.
The complainants in their petition, after making the usual averments entitling them to proceed in a case of this kind, state that on the 28th of March, 1888, the commissioners, assuming to act under authority of the statute which I have read, made the order which I have read from their journal, expressing their determination to proceed and construct a new court house rather than undertake to repair or enlarge the old one. The petition sets out all their acts; their resolution to issue bonds; their resolution employing Fallis & Co.; the action of the court of common pleas appointing Mr. Pratt to *409 act with them, and avers: “ That it is the intention of said board of county commissioners,and said auditor will on their behalf, unless restrained by the order of this court, on said 16th day of August, 1888, enter into a contract fortfurnishing the materials and performing the labor called for in said plans, specifications, bills of material for said new court house, the costand expense of which will have to be paid out of the County Treasury of Williams County, and raised by a tax upon the property of the tax-payers of said county; and if said contract is let, the obligations of the county thereby increased. The estimate by the architect of each item of expense and the ■aggregate cost of said court house as approved by said commission, will not be less than $117,628.
“Plaintiffs further say that the bonds issued and sold by said county commissioners all bear the date of May 1, 1888,- and become due at different dates” (setting out when they will fall due) “and bear interest at six per cent, per annum, payable semi-annually, so that there will be due for interest on the said bonds $1,500 on November 1st, 1888, and $1,500 on May 1st, 1889, and $1,500 each November 1st, and May 1st following, for the period until all of the bonds mature, viz: ■until May 1st, 1893.
“ No levy as required by said act of March 24,1888, has been made to pay for the interest on said bonds becoming due as above. They say that neither at the March or June session, 1888, of the county commissioners, did they determine the ■amount to be raised for public buildings, but in their March session, 1888, they did make the levies for the year 1888, and at their June session, June 5th, 1888, they took the following action, to-wit:
(They then recite the following action of the commissioners:)
“In the matter of the county levies for the year 1888. On motion, the levies as made at the March session of the board were amended so as to be as follows : For county purposes two and five-tenths (2 5-10) mills; for bridge purposes one and eight-tenths (1 8-10) mills; for soldiers’ relief as reported by the commission, one-tenth (1-10); for all county ditches two-tenths (2-10) mills; for infirmary purposes eight-tenths (8-10) mills; for building fund purposes nine-tenths (9-10) mills.”
*410 And then they proceed to say: “ Plaintiffs say that the expense of building said proposed court-house will exceed ten thousand dollars, and they further say that the expense of building said court-house, over and above said proceeds of the sale of the bonds as aforesaid issued, will exceed ten thousand dollars, to-wit: will be more than $60,000 over'the proceeds of said bonds, all of which amounts it will he necessary to raise by tax, yet the question as to the policy of building said court-house has never been submitted to the voters of the county, and no vote has ever been taken- thereon at any election. They further say that twenty days did not elapse after the introduction of the proposition to build the proposed new court-house prior to the agreement by the board of county commissioners to such proposition, although said proposition involved the expenditure of over one thousand dollars, and said proposition did not receive the unanimous consent of all the members of the board present.
“The county commissioners have never published or circulated hand-bills, nor did they ever publish in one or more newspapers of Williams county, notice of their intention to-erect the proposed new court house, although the expense will exceed one thousand dollars.
“The board of county commissioners in their advertisement for proposals have not and do not require separate and distinct proposals for furnishing the material and doing the-work for each separate and distinct branch of mechanical labor to be used in making the court house, as required in section 794 of the Revised Statutes.
“Plaintiffs further say that said act of the legislature of March 24th,-1888, is in violation of article 12, sec. 5 of the constitution, in that it does not state distinctly the object of the same. Said act is in violation of art. 2, sec. 26 of the constitution of the state of Ohio, in that it delegates to the commissioners of Williams county the authority to determine-what the act shall be, and therefore it is made to take effect-upon the approval of said board.
“ For said reasons and others apparent upon the reading-thereof, said act is void and all obligations, proceedings and doings under and by virtue of its authority are of no validity or effect.
*411 “ Plaintiffs further say that they are informed that the plans, specifications and drawings furnished by the architect were not the plans approved by the Court House Commission, but said Court House Commission made a portion of the plans for the court house,and the architect followed their instructions. Wherefore plaintiffs say that the plans, specifications and drawings and estimates upon which the proposed contract is to be based, are not such plans, specifications and drawings as are permitted and contemplated by law.
“ They further say that they are informed and believe and so charge the fact to be that said architect has never furnished, nor have the Court House Commission ever approved full, complete and accurate plans of the court house in all its parts, showing all the necessary details of the work, together with the working plans suitable for the use of mechanics and other builders during the construction thereof, so drawn and represented as to be easily understood, nor have accurate bills been furnished and approved showing the exact amount of the different kinds of materials to be used-in the erection of the said court house, as required by sec. 795 R. S., nor do plans provide for the best methods of ventilation, lighting and heating.
“ Plaintiffs charge that the action thus far taken by the county commissioners is not in accordance with law, and that if the said board of commissioners go on and let the contract for said proposed new court-house in accordance with plans, specifications and estimates of cost approved by the Court House Commission and adopted by the county commissioners, and which they now intend to do, the contract will be in contravention of the laws of the state, and the application of the funds of the county or the public money in the hands of the county treasurer towards the fulfillment of said contract will be a misapplication of said money and funds, and an irreparable wrong and injury to plaintiffs and the other tax-payers of said county.
“ Wherefore plaintiffs pray that a temporary injunction may be allowed restraining the boardjjof county commissioners or the Auditor of said County of Williams in the matters complained of.”
*412 The principal contention between the parties in this case is as to the effect of the special law to which reference has been made. It is claimed on the part of the plaintiffs, that in so far as the special act is not in conflict with the provisions of the general statute, on the subject of the construction of public buildings, the provisions of the latter — of the general act— are to prevail; that where there is no inconsistency between the two — where the provisions of the general act may apply to the matter in question without controlling or defeating the provisions of the special act, then the general statute and its provisions are to be observed and followed; and it is said here that the special act does not provide in express terms, nor by implication, that the question of the policy of constructing the proposed new building shall not be submitted to a vote of the people; and therefore that these requirements of the general statute must be observed.
And so, as to other provisions of the general statute upon the subject.
Our attention is called to sec. 859 of the Revised Statutes, which provides generally for the construction of public buildings as follows :
“A court-house, jail, offices for county officers, and an infirmary shall be provided by the commissioners, when, in their judgment, the same or any of them are needed, and they shall be of such style, dimensions, and expense, as the commissioners determine; and they are required to provide all such rooms, and fire and burglar proof vaults and safes, and other means of security in the office of the county treasurer as are necessary for the perfect protection of the public money and property therein.”
Sec. 870 says: “The commissioners may, when in their opinion it is necessary, purchase a site for a courthouse or jail, or land, for an infirmary,” etc. — and provides how the title is to be taken.
Sec. 871 provides for the issuing of bonds for the building of court houses and other purposes, and sec. 872 relates further to the subject of bonds. Sec. 873 provides for the levying of taxes for the payment of interest on bonds, and the payment of the principal. And then again sec. 2823 provides for a levy upon certain duplicate valuations, under which the Commis *413 sioners of Williams county are authorized annually to levy two mills on the dollar on the duplicate valuation. Sec. 2825, which is a material section, has been cited. It reads as follows:
“ The county commissioners shall not levy any tax, or appropriate any money, for the purpose of building public county buildings, purchasing sites therefor, or for lands for infirmary purposes, or for building any bridge, except in case of casualty, the expenses of which will exceed ten thousand dollars, without first submitting to the voters of the county, the question as to the policy of building any public county building or buildings, or for the purchasing sites therefor, or for the purchase of lands for infirmary purposes by general tax, which said submission shall be made at the annual spring or fall election, next after the proposition for such levy is adopted by the commissioners, and placed on their record. * * * ‡ * w
It also provides for the manner of printing tickets, the return of the votes, etc.
Section 851 is also referred to, and is as follows :
No proposition of any character, involving an expenditure of one thousand dollars or upwards, shall be agreed to by the board, unless the period of twenty days has elapsed since the introduction of the proposition, except by the unanimous consent of all the members present of the board, and such consent shall be taken by yeas and nays, and entered on the record.
And sec. 877:
. Before the county commissioners purchase any lands, or erect any building or bridge, the expense of which exceeds one thousand dollars, they shall publish and circulate hand-bills, and publish in one or more newspapers of the county, notice of their intention to make such purchase, erect such building or bridge, and the location of the same, for at least four consecutive weeks prior to the time that such purchase, building or location is made; and they shall hear all petitions for and remonstrances against, such proposed purchase, location or improvement.
Section 798 refers to advertising for proposals.
It is claimed, in the first instance, that inasmuch as the estimates furnished by the architect, of the cost of the proposed structure,' exceeded ten thousand dollars, viz.: amounted to *414 over one hundred thousand dollars, it was not competent for the board of commissioners, notwithstanding the provisions of the special act, to proceed in this enterprise without first submitting the question to a vote of the people. It is difficult to understand the object and purpose of the special enactment of March, 1888, if it was contemplated that before the provisions of that act should be carried into effect, a vote of the people should be had upon the question of the policy of incurring the expense of the proposed new structure. Under the general statutes as they existed, the county commissioners had full power and authority to proceed in the erection of a court house, the cost of which should not exceed ten thousand dollars, without submitting the question to a vote of the people. If it was proposed to erect a building exceeding that cost, they had full power, under the general statutes, to take steps for the erection of such building, upon submitting the question of the policy of its erection to a vote of the people, and obtaining their assent thereto. It was not necessary that there should be any special enactment upon the subject, in order to enable the commissioners of the county to make the proposed improvement. There was no occasion to obtain authority to erect a structure which should not cost a sum exceeding ten thousand dollars, because that power was given by the general statute; there was no necessity to ask the legislature to pass a law authorizing them to erect a building at a cost to exceed ten thousand dollars, if the policy of the proposed improvement should be approved by the people, because the general law contained full and ample authority upon that subject. It is quite clear to us, therefore, that when the legislature, in this special enactment of March 24th, 1888, authorized — and possibly required — the commissioners of Williams county to proceed in the erection of a building such as is there designated, it was not intended that the question of the policy of incurring the proposed expenditure, should first be submitted to a vote of the people; the enactment would be entirely superfluous, if such was the intention of the legislature.
There is a general rule of law applicable here, which has been considered in our own courts, as well as in the courts of other states, holding that where there is a special enactment *415 upon a particular subject — applicable, perhaps, to a particular locality — the general law upon the same subject shall n’ot interfere with the special enactment.
But, upon the particular question here involved, it may be proper to refer to the case of The State, ex rel. John W. Geering, et al. v. The Comm’rs of Henry Co., 31 Ohio St. 211. In that case, the commissioners of Henry county were authorized to levy, annually, a tax, not to exceed three mills upon the dollar of the duplicate valuation, for the purpose of con'structing a bridge across the Maumee river, at or near Texas, in that county. The commissioners, under authority of that statute, proceeded to levy the tax for several years, and collect it, but afterwards refused to proceed with the construction of the bridge. Proceedings were taken against them in mandamus, to compel them to continue the levy, and to proceed with the work of construction; and it was claimed on the part of the relators in that case, that, although under the language of the special statute the commissioners were not required to take action, yet, having proceeded to make a levy and collect the money, they were bound to proceed and spend it as directed by the statute. But the court held that the commissioners had the right, if in their judgment they saw proper, to abandon the proposed improvement, cease to levy and collect taxes therefor, and refund the money already collected, to the taxpayers. Although it does not appear in the report of the case, it is nevertheless a fact that it was claimed on the part of the county commissioners — as it is claimed here — that they could not lawfully proceed with the construction of a bridge, the cost of which it was conceded, would exceed ten thousand dollars, until the question of the policy of the construction of the bridge had been submitted to, and approved by a vote of the people ; and, although this point does not appear in the syllabus of the case as reported, Welch, C. J., in the decision of the case, said:
“ In the absence of this statute, the commissioners had the power to build the bridge, provided its cost did not exceed $10,000.00. If its cost would exceed that sum, a vote of the people of the county was required, before it could be built by the commissioners. The only effect of the statute, therefore, *416 was to remove this restriction, and give the Commissioners of Henry County the permission to build this particular bridge, which they might exercise without the statute, in the building of bridges costing less than $10,000.00. In other words, •it simply put this bridge, irrespective of its cost, in the cate-, gory of bridges costing less than $10,000.00.”
And the fact is that if the doctrine here contended for is correct, it would have been a sufficient answer to the mandamus in that case to say that the question of the policy of the construction of the proposed bridge had not been submitted to a vote of the people. It would have been a complete defense for, in fact, the question had not been so submitted. If it were necessary that the people should so approve, before the commissioners could proceed to the levy of a tax, then the levy already made was contrary to law, and it would have been a violation of the law to continue the levy. Therefore we are constrained to regard this opinion of Judge Welch, although it appears in the form of obiter in the case, as conclusive upon the question here presented, and we think, upon principle, that the view expressed by him is correct.
It is said again, that if the special act takes the case out of the general statute, yet that the power to erect a court house at a cost exceeding $10,000.00, must be limited to the $50,000.00 mentioned in the second section of the special act, which provides that: “The county commissioners of said Williams county, for the purpose of thus repairing, enlarging and improving said court house, or of erecting the said new court house, as shall have been, as aforesaid, determined, are hereby authorized to borrow such sums of money, not exceeding $50,000.00, as they shall deem necessary, at a rate of interest not exceeding six per cent, per annum,” etc. It is said that here is power granted to construct a new court house — power to issue bonds and borrow money to the extent of $50,000.00, and to levy a tax, in addition to all other taxes authorized to be levied, to pay the interest as it matures, and the principal of the bonds as they become due. We confess that we have had more difficulty in disposing of this question than any other point involved in the case. It may be regarded as a question of considerable importance, whether or not the power *417 conferred to construct this court house' is not limited by the authority given to raise money to pay for its construction— confined to the amount of fifty thousand dollars, authorized to be borrowed, and the additional amount that might be raised while the work of construction is going on under the two mill levy authorized by the general act. But we conclude that no-such limitation is to be applied here. There is a general power given to construct a building of the character mentioned in the statute. There is power given to borrow money not to-exceed a certain sum, to be applied to the cost of construction. There is power given in the general act to levy annually a-tax of two mills upon the dollar of the duplicate valuation,, for building purposes; and, upon the whole, it appears to us: that under a fair construction of the provisions of the act, the power of the commissioners is not to be limited as claimed.. The petition does not aver that in their proceedings the-commissioners acted in bad faith; it does not aver that in the plans they have adopted they provided for a building unreasonable in its cost, taking into account the wants, necessities and requirements of the community; it alleges nothing against the proposed action of the commissioners except the want of legal power, as it is claimed, to enter into such a contract as they have entered into. The act itself makes certain requirements. For instance, it is not only required that the structure shall include a good and serviceable basement, and also sufficient and. suitable rooms of adequate dimensions for the convenient transaction therein of the county and public business of the courts and various county officials of said county,- but that it shall also have fire-proof vaults for the records, and the best modern methods of ventilation, lighting and heating; that it shall have tile floors, and slate and metal or metal roof, with iron frame and supports. And these things are all imperatively required of the county commissioners. It is not averred that the cost to be incurred is an extravagant one; that the commissioners are wasting the public moneys in erecting this structure, or that they are going beyond the reasonable wants and necessities of the public in that respect. It is simply insisted that their power of *418 expenditure is limited, and that, because of the lack of power in this respect they must not be permitted to proceed in erecting such a court house as the statute says they shall erect, unless it can be done with the amount of money which they are authorized to borrow and to raise by levy during the period within which the building is to be constructed. We think this is not a fair construction of the statute.
As to the objection that the question of the policy of erecting a new court house must be submitted to a vote of the people, it may be further said that it is apparent from a reading of the special statute that it would be next to impossible for the commissioners to observe the requirements of the general statute, and also to follow the requirements of the special act. The act was adopted March 24th, 1888; there was no time to submit the question to a vote of the people at the spring election. The commissioners were required to take action w’thin two months after the passage of the act, and to enter into a contract for the construction within six months after its passage. It was impossible, therefore, to submit the question at the general election in November; and so it seems to us that it never entered into the minds of the legislature that the question of the policy of erecting this building should be submitted to a vote of the people.
Other questions were argued by counsel very fully and very ably. They are disposed of, however, by the views already expressed by us: for example, the requirement of the general act that as to all expenditures involving the outlay of a thousand dollars, or more, certain proceedings shall be had. This provision of the general act is not applicable under the special act. So of the requirement of the general statute, that when there is not a unanimous vote, final action of the commissioners looking towards the expenditure of public money shall be deferred for twenty days. These provisions of the general statute are not applicable here.
Objection is also taken to the form of the notice which was given to bidders. It is said that the provisions of sections 794 and 798 of the statutes have not been observed. These sections require separate bids for the different kinds of work and the different kinds of material. But we think the adver *419 tisement in this case sufficient; it directs that the bids shall be submitted in accordance with the schedules filed with the county authorities, and those schedules with plans and specifications provided for the different classes of material and work. The bids were made in conformity with these requirements and with the'requirements of the statute. Upon the whole, therefore, our conclusion is that the motion to suspend the injunction must be overruled,
Hamilton & Ford, for plaintiffs.
Mr. Emory and Mr. Doyle, for defendants.